UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

BRENDA WEISZCHOWSKI,

      Plaintiff,

v.                                              Case No:  8:14-cv-2394-T-DNF

COMMISSIONER OF SOCIAL
SECURITY,

      Defendant.

_____

## <u>OPINION AND ORDER</u>

Plaintiff, Brenda Weiszchowski, seeks judicial review of the final decision of the Commissioner of the Social Security Administration ("SSA") denying her claim for Disability Insurance Benefits ("DIB").  The Commissioner filed the Transcript of the proceedings (hereinafter referred to as "Tr." followed by the appropriate page number), and the parties filed a legal memoranda setting forth their respective positions. For the reasons set out herein, the decision of the Commissioner is **REVERSED AND REMANDED** pursuant to § 205(g) of the Social Security Act, 42 U.S.C. § 405(g).

## I.    Social Security Act Eligibility, Standard of Review, Procedural History, Factual Background and the ALJ's Decision

### A.  Social Security Act Eligibility

The law defines disability as the inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months. 42 U.S.C. §§ 416(i), 423(d)(1)(A), 1382a(3)(A); 20 C.F.R. §§ 404.1505, 416.905. The impairment must be severe, making the claimant unable to do her previous work, or any other

substantial gainful activity which exists in the national economy. 42 U.S.C. §§ 423(d)(2), 1382a(3); 20 C.F.R. §§ 404.1505-404.1511, 416.905-416.911.

**B.  Standard of Review**

The Commissioner's findings of fact are conclusive if supported by substantial evidence. 42 U.S.C. § 405 (g).  "Substantial evidence is more than a scintilla and is such relevant evidence as a reasonable person would accept as adequate support to a conclusion.  Even if the evidence preponderated against the Commissioner's findings, we must affirm if the decision reached is supported by substantial evidence." *Crawford v. Comm'r*, 363 F.3d 1155, 1158 (11th Cir. 2004) (citing *Lewis v. Callahan*, 125 F.3d 1436, 1439 (11th Cir. 1997)); *Martin v. Sullivan*, 894 F.2d 1520, 1529 (11th Cir. 1990).  In conducting this review, this Court may not reweigh the evidence or substitute its judgment for that of the ALJ, but must consider the evidence as a whole, taking into account evidence favorable as well as unfavorable to the decision.  *Martin v. Sullivan*, 894 F.2d 1329, 1330 (11th Cir. 2002); *Foote v. Chater*, 67 F.3d 1553, 1560 (11th Cir. 1995).  However, the District Court will reverse the Commissioner's decision on plenary review if the decision applied incorrect law, or if the decision fails to provide sufficient reasoning to determine that the Commissioner properly applied the law.  *Keeton v. Dep't of Health & Human Servs*., 21 F.3d 1064, 1066 (11th Cir. 1994).  The Court reviews de novo the conclusions of law made by the Commissioner of Social Security in a disability benefits case. Social Security Act, § 205(g), 42 U.S.C. § 405(g).

The ALJ must follow five steps in evaluating a claim of disability.  20 C.F.R. §§ 404.1520, 416.920.  At step one, the claimant must prove that she is not undertaking substantial gainful employment.  *Doughty v. Apfel*, 245 F.3d 1274, 1278 (11th Cir. 2001), *see* 20 C.F.R. §

404.1520(a)(4)(i).  If a claimant is engaging in any substantial gainful activity, she will be found not disabled. 20 C.F.R. § 404.1520(a)(4)(i).

At step two, the claimant must prove that she is suffering from a severe impairment or combination of impairments.  *Doughty*, 245 F.3d at 1278, 20 C.F.R. § 1520(a)(4)(ii).  If the claimant's impairment or combination of impairments does not significantly limit her physical or mental ability to do basic work activities, the ALJ will find that the impairment is not severe, and the claimant will be found not disabled.  20 C.F.R. § 1520(c).

At step three, the claimant must prove that her impairment meets or equals one of impairments listed in 20 C.F.R. Pt. 404, Subpt. P. App. 1; *Doughty*, 245 F.3d at 1278; 20 C.F.R. § 1520(a)(4)(iii).  If she meets this burden, she will be considered disabled without consideration of age, education and work experience.  *Doughty*, 245 F.3d at 1278.

At step four, if the claimant cannot prove that her impairment meets or equals one of the impairments listed in Appendix 1, she must prove that her impairment prevents her from performing her past relevant work.  *Id*. At this step, the ALJ will consider the claimant's RFC and compare it with the physical and mental demands of her past relevant work.  20 C.F.R. § 1520(a)(4)(iv), 20 C.F.R. § 1520(f).  If the claimant can still perform her past relevant work, then she will not be found disabled.  *Id*.

At step five, the burden shifts to the Commissioner to prove that the claimant is capable of performing other work available in the national economy, considering the claimant's RFC, age, education, and past work experience.  *Doughty*, 245 F.3d at 1278; 20 C.F.R. § 1520(a)(4)(v).  If the claimant is capable of performing other work, she will be found not disabled.  *Id*.  In determining whether the Commissioner has met this burden, the ALJ must develop a full and fair record regarding the vocational opportunities available to the claimant.  *Allen v. Sullivan*, 880 F.2d

1200, 1201 (11th Cir. 1989).  There are two ways in which the ALJ may make this determination. The first is by applying the Medical Vocational Guidelines ("the Grids"), and the second is by the use of a vocational expert.  *Phillips v. Barnhart*, 357 F.3d 1232, 1239 (11th Cir. 2004).  Only after the Commissioner meets this burden does the burden shift back to the claimant to show that she is not capable of performing the "other work" as set forth by the Commissioner.  *Doughty v. Apfel*, 245 F.3d 1274, 1278 n.2 (11th Cir. 2001).

### C.  Procedural History

Plaintiff filed an application for DIB on January 27, 2011, alleging an onset date of April 6, 2010.  (Tr. 118-19).  Plaintiff's application was denied initially and upon reconsideration.  (Tr. 70-75, 77-79).  At Plaintiff's request a hearing was held before Administrative Law Judge Elving L. Torres (the "ALJ") on January 30, 2013.  (Tr. 110-11).  The ALJ thereafter entered a decision finding Plaintiff not disabled on February 21, 2013.  (Tr. 10-26).  The Appeals Council denied Plaintiff's request for review on July 22, 2014.  (Tr. 1).  Plaintiff initiated the instant action by filing a Complaint (Doc. 1) on September 22, 2014.  The parties having filed memoranda of law in support of their positions, this case is ripe for review.

### D.  Summary of the ALJ's Decision

At step one of the sequential evaluation, the ALJ found that Plaintiff has not engaged in substantial gainful activity since August 6, 2010, her alleged onset date.  (Tr. 15).  At step two, the ALJ found that Plaintiff has the following severe impairments:  cervical spine small disc protrusion, some disc bulging, foramina narrowing, spondylosis, and osteophytes and lumbar spine disc protrusions, disc bulging, and foramina narrowing.  (Tr. 15).  At step three, the ALJ found that Plaintiff did not have an impairment or combination of impairments that meets or medically

equals the severity of any of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. (Tr. 18).

Before proceeding to step four, the ALJ found that Plaintiff had the residual functional capacity ("RFC") to

> perform light work as defined in 20 CFR 404.1567(b) except she can occasionally climb, balance, stoop, kneel, crouch, or crawl; she cannot climb ladders, ropes, or scaffolds or at unprotected heights; she must avoid extreme vibrations; she cannot perform activities that involve no more than frequent sudden twisting or turning of the low back and neck.

(Tr. 18).  At step four, the ALJ found that Plaintiff is capable of performing past relevant work as a collection clerk, as performance of this work does not require work related activities precluded by Plaintiff's RFC.  The ALJ concluded that Plaintiff has not been under a disability at any time from August 6, 2010, through the date of the decision. (Tr. 22).

## II.    Analysis

Plaintiff raises four issues on appeal:  (1) whether the ALJ erred by failing to properly assess the medical opinions of Plaintiff's treating and consultative examining physicians; (2) whether the ALJ erred by failing to properly consider Plaintiff's mental impairment and her manual dexterity limitations in his RFC finding; (3) whether the ALJ erred by posing a hypothetical question to the vocational expert which was not supported by substantial evidence; (4) whether the ALJ erred by failing to properly consider Plaintiff's subjective complaints.  The Court begins with the first issue.

Plaintiff argues that the reasons the ALJ provided for according little weight to Dr. Grisales' opinion were legally insufficient.  (Doc. 24 p. 11).  According to Plaintiff, the ALJ was incorrect when he found that Dr. Grisales' opinions seemed based on Plaintiff's self-reports of symptoms and restrictions rather than on objective evidence.  (Doc. 24 p. 11).  Likewise, Plaintiff

contends that the evidence does not support the ALJ's finding that Dr. Grisales' opinion is inconsistent with objective findings and the longitudinal treatment history.   (Doc. 24 p. 12). Furthermore, Plaintiff contends that ALJ erred by according little weight to the opinion of consultative examiner Dr. Springstead and erred by failing to even address the opinion of Dr. Hatton.  (Doc. 24 p. 16-17).

In response, Defendant argues that the ALJ properly gave little weight to Dr. Grisales' opinion as it was based on Plaintiff's subjective complaints and was unsupported by objective findings.   (Doc. 28 p. 5).   Defendant notes that despite Dr. Grisales' frequently finding abnormalities in Plaintiff's walking and back range of motion, Dr. Grisales nonetheless repeatedly found good strength and intact lower extremity reflexes, that Plaintiff had full range of motion, stability, and strength in the lower extremities with normal gait and station, and intact strength, reflexes, and coordination in both lower extremities.  (Doc. 28 p. 5).  Thus, Defendant argues, the inconsistencies between Dr. Grisales' treatment notes and opinion provided good cause for giving the opinion little weight.  (Doc. 28 p. 5-6).

The record reveals that Plaintiff began to receive treatment from Dr. Dario Grisales, M.D., at Pan America Pain Institute in March of 2009. (Tr. 217-20).   Dr. Grisales' progress notes document that Plaintiff was still working full time until June 1, 2009, at which time she reported losing her job. (Tr. 229).  Dr. Grisales' progress notes of June 2009, and thereafter document that Plaintiff continued to be symptomatic and that a change of 10 mg methadone seemed to be working well for her. (Tr. 229).  Dr. Grisales prescribed 30 mg Morphine four times a day which was giving Plaintiff the side effect of nausea along with 500 mg Tylenol and .5 mg Xanax every 6-8 hours. (Tr. 229).   Physical exam revealed decreased sensation to pinprick in the left arm at C4-5-6 territory. Stretch tendon reflexes were decreased in the triceps bilaterally. Paravertabral lumbar

and cervical muscle spasm was noted, positive Patrick's maneuver was noted and sacroiliac joint tenderness. (Tr. 229). Also noted was facet tenderness at C2-3, C4-5, C5-6 bilaterally. Specific point tenderness was noted along with positive Tinnels sign in both wrists. Dr. Grisales' diagnosed Plaintiff with bilateral carpal tunnel syndrome, chronic low back pain, cervicogenic/tensional headach, chronic cervicalgia and straining, cervical disc displacement without myelopathy, cervical radiculitis, thoracic pain with radiculitis, lumbar disc displacement and spondyloarthrosis without myelopathy, right lumbar radiculitis, opiod dependency, tobaccoism, and history of anxiety. (Tr. 218).

On August 24, 2009 Plaintiff's symptoms, physical exam findings and diagnosis were unchanged except for reporting numbness and tingling in her left arm. (Tr. 233-34). She told Dr. Grisales she had found another job. (Tr. 233) On October 19, 2009 and December 14, 2009 Plaintiff reported her pain medications lately do not seem to last long enough, but she was still able to function and work. (Tr. 237). Her symptoms, diagnosis and physical findings upon examination by Dr. Grisales remained the same except for decreased sensation of the right C6-7-8 territory. (Tr. 237-38, 241-42). Dr. Grisales recommended EMG and nerve condition studies "NVCS" at each prior visit; however, at this appointment when it was brought up it was noted that Plaintiff had no funds and was waiting for her health insurance to kick in from her new job before she could get the diagnostic testing done. (Tr. 238). Dr. Grisales increased her Methadone from 10 mg to 12.5 mg at that visit and indicated he wanted to obtain a new MRI of her cervical spine as well and perform cervical facet injections. (Tr. 238, 242).

At her February 8, 2010, visit Plaintiff reported the Morphine was not helping and she sometimes needs to take 2 at a time. (Tr. 245). The physical findings upon examination, symptoms and diagnosis remained the same as previous visits. (Tr. 245-246). Dr. Grisales changed her

Morphine back to 15 mg and added Oxycodone every 4-6 hours. (Tr. 246).  At her April 5, 2010 visit, Plaintiff was complaining of pain in her neck, mid back and low back with tingling in her hands and lower extremities. (Tr. 249).  Her condition remained unchanged through July 26, 2010 except she began to complain of bilateral knee pain as well and recurrence of right sided headaches. (Tr. 249-64).  On July 26, 2010, she reported her headaches were so severe for two days that she missed work. (Tr. 264).  By September 20, 2010, Plaintiff advised Dr. Grisales that she had lost her job along with her insurance and had not been able to get an MRI. She complained of pain in her neck, mid back, low back, bilateral knee pain, tingling and numbness in her hands and continuing right sided headaches. (Tr. 269).  Dr. Grisales added 4 mg Dilaudid every 4-6 hours to her medications and discontinued her Oxycodone. (Tr. 269, 274-275).

On February 14, 2011, Plaintiff returned to Dr. Grisales for medication management complaining of neck and low back pain along with numbness and aching in the right hip, thoracic spine, both feet, both arms and right leg. She was now taking along with her other medications, 10 mg Percocet and her Xanax was increased to 2 mg. (Tr. 279).  Physical findings upon examination remained essentially the same as were her diagnosis. (Tr. 280-281).

Dr. Grisales continued to treat Plaintiff through July 17, 2013. (Tr. 307-35, 342, 343, 375-84).  On May 18, 2011, Dr. Grisales progress note indicates Plaintiff's neck pain had worsened and that "patient was able to function at low levels of activity."  Dr. Grisales noted that she does present side effects from the medications, but no signs of aberrant behavior.  Pain was described as aching and ongoing.  Her low back pain was also notably worsened as was her previously documented overall extremity numbness.  She had numbness in her right hip, thoracic spine, both feet and both arms.  (Tr. 333).  Her gait and station was described as having a limp and antalgic gait.  She was unable to turn quickly when walking and she drops her right heel.  She was noted

to have a pelvic tilt. (Tr. 333).  Physical exam revealed increased cervical kyphosis, tender greater occipital nerves to palpitation and facet joints with tenderness and spasms of the left and right paraspinals.  Lumbar range of motion was reduced to 26%-50%in all directions.  Tinnel's sign was positive on bilateral wrists. Patrick's maneuver was positive. Neurological evaluation indicated decreased sensation to pin prick and vibration noted at C5, C6, and C7. (Tr. 334).  Dr. Grisales diagnosis was cerivcalgia, lumbago, headaches, cervical radiculopathy, lumbar disc displacement and lumbar radiculitis. (Tr. 333-35). Dr. Grisales discontinued Dilaudid, restarted 15 mg Oxycodone and again recommended cervical facet injections, EMG, NVCS studies and a cervical MRI. (Tr. 335).  Plaintiff presented to Dr. Grisales every 8 weeks thereafter through July, 2012 with the same symptoms and findings upon physical and neurological examination.  On November 9, 2011 Dr. Grisales added cervical spondylosis as a diagnosis. (Tr. 307-32).

On August 24, 2012, Dr. Grisales completed a Physical Functional Capacity Questionnaire. She opined that Plaintiff's prognosis was "fair" and that her symptoms were neck pain, headaches, poor sleep secondary to pain, lethargy, and inability to concentrate secondary to insomnia. (Tr. 337).  Dr. Grisales opined Plaintiff was limited to sitting and/or standing for 10 minutes at a time and could only stand/walk and sit for 2 hours out of an 8 hour day. (Tr. 338-39).  Plaintiff would require a job with a sit/stand option at will, with the ability to take a 10-15 minute unscheduled break every hour. (Tr. 338-39).  With prolonged sitting Plaintiff would need to elevate her legs above waist level more than 40% of the day.  (Tr. 335).  She could occasionally lift less than 10 pounds and could never or rarely keep her neck and head in a static position, look up or turn her head right or left.  (Tr. 339-40).  Dr. Grisales opined Plaintiff would miss more than 4 days of work per month due to her impairments. (Tr. 340).

Medical progress notes from Dr. Grisales from February 13, 2013 through July 17, 2013, continued to document the same complaints, the same finding upon physical examinations, and same diagnosis Dr. Grisales continued to make medication and dosage changes in an effort to alleviate Plaintiff's symptoms. (Tr. 342, 375-84).

"The Secretary must specify what weight is given to a treating physician's opinion and any reason for giving it no weight, and failure to do so is reversible error." *MacGregor v. Bowen*, 786 F.2d 1050, 1053 (11th Cir. 1986) (citation omitted).  The Eleventh Circuit has held that whenever a physician offers a statement reflecting judgments about the nature and severity of a claimant's impairments, including symptoms, diagnosis, and prognosis, what the claimant can still do despite his or her impairments, and the claimant's physical and mental restrictions, the statement is an opinion requiring the ALJ to state with particularity the weight given to it and the reasons therefor. *Winschel v. Commissioner of Social Security,* 631 F.3d 1176, 1178-79 (11th Cir. 2011).  Without such a statement, "it is impossible for a reviewing court to determine whether the ultimate decision on the merits of the claim is rational and supported by substantial evidence." *Id.* (citing *Cowart v. Shweiker,* 662 F.2d 731, 735 (11th Cir. 1981)).

If an ALJ concludes that the medical opinion of a treating physician should be given less than substantial or considerable weight, the ALJ must clearly articulate reasons showing "good cause" for discounting it.  *Lewis v. Callahan*, 125 F.3d 1436, 1440 (11th Cir. 1997).  The Eleventh Circuit has concluded that good cause exists when the: "treating physician's opinion was not bolstered by the evidence; (2) evidence supported a contrary finding; or (3) treating physician's opinion was conclusory or inconsistent with the doctor's own medical records.  *Phillips v. Barnhart*, 357 F.3d 1232, 1240 (11th Cir. 2004).

In this case, the Court finds that the ALJ erred by according little weight to the opinion of Dr. Grisales. The ALJ found in his decision that Dr. Grisales' opinion was based on Plaintiff's self-reports of symptoms and restrictions rather than on objective evidence and that his opinion is inconsistent with the objective findings and the longitudinal history. (Tr. 21). This finding, however, is not supported by the evidence. The record indicates that Plaintiff received treatment from Dr. Grisales every two months since March of 2008. (Tr. 268-84, 307-35, 336-43, 375-84). Dr. Grisales peformed physical examinations on Plaintiff at least every eight weeks for almost five years, documenting in detail his findings. Dr. Grisales had extensive and longitudinal knowledge of Plaintiff's condition as a treating physician, and not as a state agency medical consultant, as the ALJ described Dr. Grisales in his opinion. (Tr. 21). Plaintiff's treatment notes indicate decreased sensation to pinprick each visit, decreased lumbar range of motion in all directions, Tinnels sign and Phalens were both positive. (Tr. 12).

Dr. Grisales' opinion was also supported by the MRIs of Plaintiff's cervical and lumbar spine conducted on January 2, 2013. (Tr. 357-60). The MRI reports documented disc bulge at C3-C5 indenting the thecal sac, L3-L4 disc bulge with a possible annual tear, a disc bulge at L4-L5 resulting in left foramina stenosis, and a disc bulge at L5-S1 encroaching on the descending exiting nerve. (Tr. 358-60). While Dr. Grisales rendered his decision on August 24, 2012, the subsequent MRIs showing objective evidence support Dr. Grisales' opinion.

The ALJ also gave the opinion of Dr. Grisales little weight because Dr. Grisales finding that Plaintiff would miss more than four days of work a month is "mere speculation as neither Dr. Grisales nor witnesses have been at work with the claimant to have a foundation for such a statement" and that "it is the U.S. Administrative Law Judge's responsibility to determine a claimant's residual functional capacity after considering the record as a whole." (Tr. 21). While

the ALJ is correct that the ultimate determination of Plaintiff's RFC is the ALJ's decision, this statement does not constitute a legitimate reason for discounting a treating physician's opinion where, as here, the opinion identified specific functional limitations and was not a conclusory statement that Plaintiff was disabled.  The ALJ has failed to sufficiently articulate good cause for rejecting the opinion of treating physician Dr. Grisales and will require, upon remand, the ALJ to reevaluate Dr. Grisales' opinion.

Likewise, the Court finds that the ALJ erred by failing to state the weight he accorded the opinion of Dr. Billie Jo Hatton, Ph.D., opined after an April 18, 2011 Psychological Evaluation that Plaintiff's ability to maintain a competitive work situation is somewhat guarded.  While the ALJ discussed Dr. Hatton's findings and opinion during his step two finding of whether Plaintiff had a mental disorder that was a severe impairment, the ALJ did not specify the weight he accorded to this opinion when determining Plaintiff's RFC at step four.  Upon remand, the Court will require him to do so.

As to the opinion of Dr. Springstead, however, the Court finds that the ALJ committed no error.  Dr. Springstead opined on January 17, 2013, after a single examination of Plaintiff, that "[i]t would appear, from an orthopedic stand point, that she is disabled and unable to work."  (Tr. 365).  The ALJ noted in his decision that Dr. Springstead's opinion was a legal conclusion on an issue reserved for the Commissioner and gave it no weight.  The ALJ committed no error in doing so as such statements are not medical opinions entitled to significant or controlling weight.  *See* 20 C.F.R. §§ 404.1527(a)(2), (c)(2), (d)(1).

As the ALJ's treatment of the opinions from Drs. Grisales and Hatton on remand may alter the ultimate RFC finding, the Court will defer from addressing Plaintiff's other raised issues at this time.

**III.     Conclusion**

The decision of the Commissioner is **REVERSED AND REMANDED**.  The Clerk of the

Court is directed to enter judgment consistent with this opinion and, thereafter, to close the file.

**DONE** and **ORDERED** in Fort Myers, Florida on March 11, 2016.

_____

DOUGLAS N. FRAZIER

UNITED STATES MAGISTRATE JUDGE

Copies furnished to:

Counsel of Record
Unrepresented Parties